Bueket, J.
The road in question was a free turnpike road constructed under the “One Mile Assessment Pike” statute, passed March 29, 1875, 72 O. L., 93, and its amendments, and carried into the Revised Statutes as chapter seven, title seven, section 4774 and following sections.
Section 4774 provides that a petition shall be signed and presented to the county commissioners by a majority of those who own lands within the bounds of a free turnpike, asking for the appointment of commissioners to lay out arid establish a free turnpike road between certain named points, stating in such petition that they desire the county commissioners to levy *48 an extra tax tlie amount of which shall not exceed ten mills on the dollar valuation in any year, on the lands and taxable property within the bounds of the road, and also the number of years they desire the levy to continue, not exceeding eight years. By section 4777 it is provided that no such tax shall be levied for an amount or for a term of years greater than that set forth in the petition, unless the petition be renewed, or the county commissioners order an extension of the levy for the purposes stated in section 4812. There was no renewal of the petition in this case. Section 4812 then in force reads as follows :
“Section 4812. The provisions of this chapter shall extend and be applicable to all free turnpike roads heretofore built, now in process of construction, or hereafter to be constructed; and at any time when the county commissioners shall deem it necessary for the purpose of providing the means for completing the same, and liquidating any indebtedness incurred on account of such road, they may continue the tax originally levied for constructing the same for a period not exceeding, in the aggregate, five years, in addition to the levy made on petition, as provided in section forty-seven hundred and seventy-seven.”
As the statute stood when the road in question was petitioned for and constructed, the commissioners had authority to levy ten mills on the dollar each year for eight years by virtue of the petition for the road, and for five years longer by virtue of said section 4812, making in all thirteen years. The ten mills on the dollar of the valuation of real and personal property in the taxing district in the bounds of *49 the road were levied and paid, for the full term of thirteen years.
By an amendment of said section 4812, April 17, 1886, S3 O. L., 85, the period for which a levy might he made for liquidating any indebtedness incurred on account of such road, was extended to ten years in addition to the eight years on petition, thus, making in all eighteen years instead of thirteen years.
The tax complained of in the petition of the plaintiffs in error was levied' under this last amendment of section 4812 adding five years to the period for which a levy of ten mills on the dollar might be made for the purpose of paying the outstanding bonds issued in the proceedings to construct said road.
Plaintiffs in error claim that the power of the commissioners at the time the road Avas constructed was limited to a levy of ten mills on the dollar for thirteen years, that the addition of Awe years making a total of eighteen years is retroactive, and that the said amendment of section 4812, when applied to the road in question, is in conflict with section 28 of article 2 of the constitution, Avliich provides that, “The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts.” '
In Bowles v. State, 37 Ohio St., 35, this court held, and we think correctly, that the leAry under this one mile assessment law is a tax and not an assessment. Being a tax the general assembly derives its powers to levy the same from section one of article two of the constitution, which vests all legislative power in the general assembly. The power of taxation so vested in the general assembly is supreme except as limited by other provisions of the constitution, and the provision against the passage of retroactive larvs, *50 and laws impairing the obligation of contracts, is, in a proper case, a limitation upon the taxing power.
Does the case at bar fall within that limitation? On the one hand it may be urged with much force that the property owners in this special tax district by their petition for the road set the machinery provided by the statute in motion, and caused the road to be constructed; that they retain the road and its benefits, and that they should pay the cost of the same upon the well recognized principle that statutes imposing taxes to pay a pre-existing debt are generally not retroactive. Holtz v. Commissioners, 41 Ohio St., 423; State v. Cincinnati, 52 Ohio St., 452; Cooley on Taxation, 291. And it might further be urged that section one of article two of the constitution giving the general assembly the power of taxation must be read into this one mile assessment law, and that the limitation therein to ten mills and thirteen years is subject to .the power of the general assembly to change the same as well as other parts of the statute, and that while the county officers are restricted to the ten mills and thirteen years limitation, there is no restriction or limitation on the power of the general assembly to authorize sufficient taxation to pay the debt incurred in the construction of the road; and further that the bondholders should receive their money.
While these considerations have much force, we have concluded that they are insufficient to sustain the taxation in question. While it is true that section One of article two of the constitution must be read into the statute in question, it is equally true that it must be so read into the statute with the limitation against the passage of retroactive laws attached thereto. So that after all the question turns *51 upon the force and effect to be given to that provision of the constitution which says: “The general assembly shall have no power to pass retroactive laws.” Article 2, section 28. This provision is in the nature of an estoppel. The general assembly having the power to enact laws, and on the one hand having failed to do so, and permitted persons to conduct their affairs with reference thereto, or on the other, having enacted laws with certain limitations, and persons having conformed their conduct and affairs to such state of the law, the general assembly is prohibited, estopped, from passing new laws to reach back and create new burdens, new duties, new obligations, or new- liabilities not existing at the time.
Under the statute in question the general assembly enacted that an extra tax of ten mills and no ■more, should be levied for a period of thirteen years and no longer, and with that limitation in the statute the property owners petitioned, and set the machinery in motion for the double purpose of having the road constructed and paying the cost thereof, within the limitation provided in the statute. They relied upon that limitation so provided by the general assembly, and they were justified in so doing, because while the general assembly grants powers to the people, it limits the manner in which those powers shall be exercised, and such limitations are of as much force as the powers themselves. While everyone is liable to pay the general taxes to carry on the government, there is no such general liability to pay extra taxes, but such extra taxes can only be imposed in accordance with the particular statute authorizing them. The statute in question authorized a levy of ten mills each year for thirteen years and no longer, and to now impose this extra tax for a period of five *52 years beyond the thirteen, is imposing an additional burden upon the property owners in this taxing district, not assumed by them when they signed and presented their petition for the road, and which the general assembly assured them by the limitation in the statute, should never be imposed. This assurance the constitution required the general assembly to make good, and it therefore had no power to add this extension of five years to the thirteen as to the road in question, and the extra taxes imposed under that extension are unauthorized and void, and should be enjoined. The principle is the same as was held in Cincinnati v. Seasongood, 46 Ohio St., 296, to the effect that in street assessments, the statute in force at the time'the improvement ordinance was passed, must govern.
This case is different from a case where the cost of a public improvement exceeds the fund provided by the statute, thus leaving an outstanding indebtedness, the statute having no limitation as to amount or time. In such cases the general assembly has power to levy a tax to pay such indebtedness. Holtz v. Commissioners, 41 Ohio St., 422.
But it is urged that the act of April 2, 1859, entitled “An act for the relief of the holders of orders issued by free turnpike road companies,” 56 O. L., 121, and carried into the Revised Statutes as sections 4814 and 4815, authorizes the levy of the tax in question. Those sections at the time this road was constructed read as follows:
“4814. When the right of any free turnpike road, company to levy special taxes to pay the orders issued by it has ceased, leaving outstanding orders unpaid, and their payment unprovided for, the commissioners of such road company shall immediate!v *53 make out and deliver to the auditor of the county in which such road or any part thereof is situate, a complete and perfect list of all such outstanding orders, for the payment of which they have no funds or means of payment, with a description of each order, as to date, amount, rate of interest, if any, and when payable, which shall be verified by said commissioners, and the county auditor shall lay the same before the county commissioners at their next regular session thereafter.”
“4815. At any regular session of the county commissioners at which such list is laid before them, they shall immediately proceed to ascertain the aggregate amount of such orders, including interest, in case they draw interest, and adding thereto .an amount sufficient to pay the expenses of assessment and collection, and to cause the same to be assessed upon the same lands and lots as were subject to taxation for the construction of the road, or to pay for the same, at the time when the right to tax such lands and lots ceased, according to their true value in money, as shown by their valuation contained in the county duplicate.”
The “free turnpike road company” spoken of in said section 4814, is the “corporation” mentioned in section nine of the act of March 12,1845, entitled “An act to provide for laying out and establishing free turnpike roads,” 43 O. L., 106, Swan’s Revised Statutes, 822; Curwen Revised Statutes, Chapter 605, page 1163; Curwen’s laws, Chapter 316, page 764, S. & C. 1321, and carried into the various subsequent pike statutes, until it is now the “body corporate” as provided in section 4795, Revised Statutes. It seems clear that these sections are not applicable to the road in question. In the construction of free turn *54 pikes under the said act of 1845, in aid of which said act of April 2,1859, was passed, no bonds were issued, but as the work progressed orders were issued on the fund raised by said extra taxation. The statute could apply to any particular road for a period not exceed - ing ten. years, and it often occurred that orders were outstanding at the end of the ten years and no fund to pay them, and the act of 1859 was passed to create a fund for the payment of such orders. It will be noticed that sections 4814 and 4815 authorize the levy of an assessment only for the payment of “orders;” nothing is provided for the payment of debts or bonds. To remedy this defect the general assembly amended the sections February 28, 1886, after this road was constructed, so as to make provision for the payment of “orders, bonds or other indebtedness,” so that the general assembly has construed those sections as they stood when this road was constructed, as providing only for the payment of “orders.” That such was the intention is still more clearly shown by the fact that section two of the act of March 27,1857, 54 O. L., 42, was repealed and not re-enacted in the Revised Statutes. That section is as follows:
“Section 2. That whenever the commissioners on any free turnpike road shall have incurred a debt in the construction of the same, a part of which debt remains, or would remain, unpaid at the expiration of the charter for said road, the county commissioners may, if they are satisfied the road commissioners have acted honestly and in good faith in their expenditures on said road, continue or cause to be continued, such special taxes as were by the original act, or acts amendatory, authorized to be assessed for the construction of said road, until said indebtedness shall have been paid.”
*55 The “charter for said road” spoken of in the section was the ten years during which special taxes. might be levied for the free turnpike, and as the limit was afterward extended to thirteen years under the one mile pike law, the charter would end at the close of that period, and if the general assembly had intended that the special taxes should be continued until all indebtedness should be paid, it would have carried the substance of this section into the Revised Statutes. There is another and perhaps stronger reason why these sections cannot apply to the road in question. The one mile pike statute, section 4786, requires the extra taxes to be levied on the real and personal property within the taxing district, and it is only by thus preserving the equality of taxation that the statute conforms to section two of article twelve of the constitution. Bowles v. State, 37 Ohio St., 35. So that funds to be raised by extra taxation for the payment of the outstanding indebtedness must be by equal taxation on all of the real and personal property in the extra taxing district. But section 4815 does not authorize an extra tax on the personal property in the district, but only on the “lands and lots.” And as there must be equality of taxation on all the property, personal as well as real, and as the personal cannot be taxed, it follows that the real estate cannot be taxed. The doctrine of assessments cannot be applied, because assessments are only according to benefits, and this section requires that the amount be assessed upon the lands and lots, and no provision is made for the ascertaining of. benefits; and moreover assessments according to benefits cannot be made on personal property. To apply section 4815 to the road in question would therefore render it unconstitutional.
*56 The purchasers of bonds- were bound by the limitations in the statutes, the same as if incorporated into the bonds, and were bound to take notice of the extent of the taxing district, and of the value of the property therein, and with those facts before them, they acted at their peril in so far as the property owners in this special taxing district are concerned; and if they made a mistake as to those facts, the loss should fall upon them, rather' than upon the property owners who have paid taxes up to the full limit of the statute. The bonds should be paid, if possible within the provisions of the constitution, but the question as to the manner of raising a fund for that ^purpose is for the general assembly, and not for this court.
The motion to strike out the amendment to the petition raised the question of its sufficiency, and was in effect a demurrer, and it was error to sustain the motion because the amendment showed that bonds had been issued and sold, and aided in showing that sections 4814 and 4815 were not applicable to the case.
We therefore hold that sections 4814 and 4815 are not applicable to the case at bar, and that section 4812 extending the time for five years beyond the thirteen, is retroactive when applied to this case, and that the tax complained of in the petition is not warranted by any law, and should be enjoined. It was error- to sustain the demurrer to the petition, and error to render judgment against the plaintiffs, and error for the circuit court to affirm the judgment.

Judgment reversed.

Shauók, O. J., and Minshall, Williams, Speak, and Davis, JJ., concur.